UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:                               │
│ DATE FILED:  2/5/19                  │
└─────────────────────────────────────┘
```

-----------------------------------------------------------------x

SECURITIES AND EXCHANGE                  :
COMMISSION,                              :
                                         :
            Plaintiff,                   :
                                         :
    v.                                   :     No. 15 Civ. 3877 (KMW)
ROBERT P. DEPALO, JOSHUA B. GLADTKE,     :
GREGG A. LERMAN, PANGAEA TRADING         :
PARTNERS LLC, ARJENT LLC,                :     ECF CASE
ARJENT LIMITED, AND EXCALIBUR ASSET      :
MANAGEMENT LLC,                          :
                                         :
            Defendants,                  :
                                         :
and                                      :
                                         :
ROSEMARIE DEPALO AND                     :
ALLIED INTERNATIONAL FUND, INC.,         :
                                         :
            Relief Defendants.           :
                                         :
-----------------------------------------------------------------x

KMW

[PROPOSED] FINAL JUDGMENT AS TO DEFENDANT GREGG A. LERMAN

The Securities and Exchange Commission having filed a Complaint and Defendant

Gregg A. Lerman ("Defendant") having entered a general appearance; consented to the Court's

jurisdiction over Defendant and the subject matter of this action; consented to entry of this final

Judgment ("Final Judgment"); waived findings of fact and conclusions of law; and waived any

right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a)(3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)(3)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly to engage in any transaction, practice, or course of business which operates or    would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgementof $379,094.21, representing his ill-gotten gains as a result of the conduct alleged in the Complaint. However, Defendant's obligation to pay disgorgement shall be deemed satisfied upon entry of this Final Judgment by the restitution order of $6,500,000 against Robert DePalo, ordered in *New York v. DePalo, et al.*, Indictment No. 01450/2015 (N.Y. Sup. Ct.).

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of

exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the

allegations in the complaint are true and admitted by Defendant, and further, any debt for

disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this

Final Judgment or any other judgment, order, consent order, decree or settlement agreement

entered in connection with this proceeding, is a debt for the violation by Defendant of the federal

securities laws or any regulation or order issued under such laws, as set forth in Section

523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VI.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: **Feb. 5** , **2019**

_Kimba M. Wood_
UNITED STATES DISTRICT JUDGE

3

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x

| | |
|---|---|
| **SECURITIES AND EXCHANGE**<br>**COMMISSION,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : **No. 15 Civ. 3877 (KMW)** |
| **ROBERT P. DEPALO, JOSHUA B. GLADTKE,** | : |
| **GREGG A. LERMAN, PANGAEA TRADING** | : |
| **PARTNERS LLC, ARJENT LLC,** | : **ECF CASE** |
| **ARJENT LIMITED, AND EXCALIBUR ASSET** | : |
| **MANAGEMENT LLC,** | : |
| | : |
| **Defendants,** | : |
| | : |
| **and** | : |
| | : |
| **ROSEMARIE DEPALO AND** | : |
| **ALLIED INTERNATIONAL FUND, INC.,** | : |
| | : |
| **Relief Defendants.** | : |

--------------------------------------------------------------------x

## CONSENT OF DEFENDANT GREGG A. LERMAN

1.  Defendant Gregg A. Lerman ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.  Defendant has entered into a deferred-prosecution agreement that acknowledges responsibility for criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in *New York v. DePalo, et al.*, Indictment No. 01450/2015 (N.Y. Sup. Ct.) ("*New York v. DePalo*"), Defendant acknowledged responsibility for securities fraud in violation of NY General Business Law § 352-C(1)(c). In connection with that deferred-prosecution agreement, Defendant acknowledged the facts set out in his deferred-prosecution agreement that

is attached as Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *New York v. DePalo*.

3.       Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

> (a)       permanently restrains and enjoins Defendant from violations of Section 17(a)(3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(3); and

> (b)       orders that while Defendant is liable to pay disgorgement of $379,094.21, representing his ill-gotten gains, such obligation to pay disgorgement shall be deemed satisfied by the restitution order of $6,500,000 against Robert DePalo, ordered in *New York v. DePalo*.

4.       Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.       Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.       Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

7.       Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8. Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9. Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10. Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this

3

action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e),  Defendant acknowledges the deferred-prosecution agreement for related conduct described in paragraph 2 above, and:  (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.  Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii)

4

right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     Defendant agrees to waive all objections, including but not limited to, constitutional, timeliness, and procedural objections, to the administrative proceeding that will be instituted when the Final Judgment is entered.

14.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: December 15, 2018

_____
Gregg A. Lerman

On December 15, 2018, Gregg Lerman, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

PAUL MARCHESE
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02MA5025974
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES IN APRIL 4, 20 22

_____
Notary Public
Commission expires:

5

# Exhibit A

**DISTRICT ATTORNEY**
COUNTY OF NEW YORK
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**CYRUS R. VANCE, JR.**
DISTRICT ATTORNEY

## DEFERRED PROSECUTION AGREEMENT

This is the Cooperation and Deferred Prosecution Agreement between Gregg A. Lerman and the District Attorney of New York County ("DANY").

1. Mr. Lerman, by and through his attorney, Mary Beth Buchanan, Esq., hereby enters into this Agreement with DANY voluntarily. As it relates to the terms of this Agreement:

   a. Mr. Lerman agrees that he shall in all respects comply with his obligations under this Agreement. Mr. Lerman accepts and acknowledges responsibility for his conduct as set forth in the Factual Statement attached to this agreement as Exhibit A and incorporated herein by reference (the "Factual Statement").

   b. If DANY initiates a prosecution that is deferred by this Agreement against Mr. Lerman, he agrees that he will neither contest the admissibility of the Factual Statement or any other information provided by him to DANY, nor contradict the facts contained within the Factual Statement.

2. As a result of Mr. Lerman's conduct, which is described in the Factual Statement, DANY has determined that it could institute a criminal prosecution against him for violations of the Martin Act under General Business Law §352-C(1)(c). As a result, Mr. Lerman hereby expressly agrees to the terms stated in this agreement as a means of settlement of any and all criminal charges that could be filed against him. Mr. Lerman agrees that any prosecutions following a breach of this Agreement for acts that are not time-barred by the applicable statute of limitations as of the date

of this Agreement may be commenced against Mr. Lerman in accordance with this Agreement, notwithstanding the expiration of such statute of limitations between the signing of this Agreement and the expiration of this Agreement. Likewise, in the event of a breach of this Agreement, Mr. Lerman agrees to waive the speedy trial provisions of Article 30 of the Criminal Procedure Law of New York State. The waivers in this paragraph are made knowingly, voluntarily, and in express reliance on the advice of Mr. Lerman's counsel.

3. Mr. Lerman further agrees that he shall not, through his attorneys or otherwise, make any public statement contradicting the acceptance of responsibility by Mr. Lerman as set forth in this Agreement or in the Factual Statement.

4. Mr. Lerman shall furnish full and complete cooperation to DANY in any investigation relating to the Factual Statement attached to this Agreement as Exhibit A, or any other information provided by him to DANY. Such cooperation shall include, but not be limited to, immediate, full, complete and truthful disclosure of all information relevant to the Factual Statement and any other information provided to DANY, and production of any and all records and other evidence in his possession relevant to all inquiries made by DANY, or any other agency designated by DANY.[1] Mr. Lerman shall attend any meeting scheduled to discuss matters relating to the above described cooperation whenever DANY requests such attendance, and to contact or communicate with DANY or any agency designated by DANY as instructed.

5. Mr. Lerman shall appear with a lawyer and testify truthfully as a witness in any Grand Jury proceeding, pretrial hearing, trial or other official proceeding at which he is requested to do so by DANY. When Mr. Lerman testifies as a witness before a Grand Jury, he agrees to waive immunity pursuant to Section 190.45 of the

---

[1] Mr. Lerman agrees to waive any privilege he holds as it relates to the production of records.

Criminal Procedure Law. In the event that Mr. Lerman should testify at any other proceeding, related to the conduct as set forth in the attached Factual Statement, he shall not assert any privilege against self-incrimination. Any protection from prosecution for the use of his statements that Mr. Lerman receives during his cooperation shall be solely as a result of this Agreement. This Agreement shall be made an exhibit to Mr. Lerman's waiver of immunity before any Grand Jury.

6. Mr. Lerman shall actively participate in the investigation of the conduct as set forth in the Factual Statement (the "Conduct"), as necessary, with DANY or any other agency as directed by DANY. Active participation may involve, but not be limited to, the recording of telephone conversations and face-to-face meetings, including the execution of a "Confidential Informant Agreement," if necessary.

   a. Mr. Lerman shall commit no crimes or violations.

   b. Mr. Lerman shall not knowingly jeopardize the safety of any investigator or the confidentiality and success of any investigation.

   c. Mr. Lerman shall, as requested by this Office, execute any and all waivers necessary for this Office to obtain copies of any financial documents, including tax returns, related to the Conduct.

7. Mr. Lerman understands that the United States Securities and Exchange Commission ("SEC") is conducting a parallel investigation related to the Conduct as set forth in the Factual Statement attached to this document as Exhibit A. Under this agreement, Mr. Lerman is required to fully comply with any and all of the terms set forth in any settlement or agreement between Mr. Lerman and the SEC related to the Conduct.

8. Should DANY determine, during the term of this Agreement, that Mr. Lerman has committed any New York State crime after the date of the signing of this Agreement, he will become subject to prosecution for any such crimes, including but not limited to the Conduct described in the attached Factual Statement. The discovery by DANY of any purely historical criminal conduct that did not take

3

place during the term of the Agreement and/or during the period covered in the Factual Statement will not constitute a breach of the Agreement.

9. Should DANY determine that Mr. Lerman has committed a willful and material breach of any provision of this Agreement, DANY shall provide written notice to Mr. Lerman of the alleged breach and allow him a two-week period from the date of receipt of said notice, or longer, at the discretion of DANY, to cure the breach by making a presentation to DANY that demonstrates that no breach has occurred, or, to the extent applicable, that the breach is not willful or material, or has been cured. The parties expressly understand and agree that, should Mr. Lerman fail to make the above-noted presentation within such time period it shall be presumed that he is in material breach of this Agreement. The parties further understand and agree that the exercise of discretion by DANY under this paragraph is not subject to review in any court or tribunal. In the event of a breach of this Agreement that results in a prosecution, such prosecution may be premised upon any information provided by or on behalf of Mr. Lerman to DANY, unless otherwise agreed when the information was provided.

10. It is further understood that this Agreement does not relate to or cover any conduct by Mr. Lerman other than that disclosed during the course of the investigation or described in the Factual Statement and this Agreement. Nothing in this Agreement restricts in any way the ability of any federal department or agency from proceeding criminally, civilly, or administratively, against Mr. Lerman. The parties to this Agreement intend that the Agreement does not confer or provide any benefits, privileges, immunities, or rights to any other individual or entity other than the parties hereto.

11. This Agreement sets forth all the terms of the Deferred Prosecution Agreement between Mr. Lerman and DANY. There are no promises, agreements, or conditions that have been entered into other than those expressly set forth in this Agreement, and none shall be entered into and/or bind Mr. Lerman or DANY

4

unless expressly set forth in writing, signed by DANY and Mr. Lerman. This
Agreement supersedes any prior promises, agreements, or conditions between Mr.
Lerman and DANY. Mr. Lerman agrees that he has the full legal right, power and
authority to enter into and perform all of his obligations under this Agreement,
and he agrees to abide by all the terms and obligations of the Agreement as
described herein.

12. This Agreement shall be in effect during the pendency and until the conclusion
of any investigation and/or prosecution by DANY and/or any other government
agencies as designated by DANY related to the conduct set forth in the Factual
Statement attached to this Agreement as Exhibit A.

**Acknowledgment:**

I, Gregg Lerman, hereby expressly acknowledge the following: (1) that I have read this entire Agreement as well as the other documents filed herewith in conjunction with this Agreement, including the Factual Statement attached as Exhibit A; (2) that I have had an opportunity to discuss this Agreement fully and freely with Mary Beth Buchanan, Esq., who serves as my attorney; (3) that I fully and completely understand each and every one of the terms of this Agreement; (4) that I am fully satisfied with the advice and representation provided by my counsel; (5) that I have signed this Agreement knowingly and voluntarily.

DATE: April 27, 2015

Gregg A. Lerman

Mary Beth Buchanan, Esq.

Brian A. Kudon

Assistant District Attorney

José A. Fanjul

Assistant District Attorney

**Exhibit A: Factual Statement**

## FACTUAL STATEMENT OF GREGG LERMAN

I, GREGG LERMAN, admit that in the County and State of New York, from on or about September 2010 through on or about September 2012, a private placement memorandum ("PPM") for Pangaea Trading Partners, LLC. ("Pangaea") and several amendments to that private placement, included a statement made to induce or promote the sale or transfer of securities, which contained a misrepresentation of material fact. In relevant part, under a section titled "Certain Relationships and Related Transactions", a paragraph read: "Arjent Limited entered into an Advisory Services Agreement [with] SPK Partners LLC ("SPK"), an entity with which Mr. Lerman is associated." This statement, which appeared in the Pangaea PPM and was supplied to investors, is false. SPK did not, during the aforementioned time period, nor does it currently have an advisory services agreement with Arjent Limited. In reality, I personally received payment of $17,250 per month under that provision as compensation for the work I performed as a Director at Arjent Limited, not pursuant to an advisory services agreement. Additionally, the PPM and various amendments stated that I was the Managing Director at Arjent LLC. That statement was also false. In fact, I was appointed President of Arjent LLC by Robert DePalo. Despite the fact that I received copies of the PPM and various amendments during the aforementioned time period, I never made any attempts to correct the falsity of those statements or to so inform the investors of Pangaea or the investors of SPK.

In approximately 2000, I began working at a brokerage firm named SW Bach located in Long Island, New York. The principals of SW Bach founded a brokerage firm located in the United Kingdom named Arjent Limited. Joshua Gladtke moved to London to work at Arjent Limited. Around 2005, Robert DePalo and others acquired Arjent Limited from the principals of SW Bach. During this sale, it was determined that Joshua Gladtke, would remain in the United Kingdom under the employ of Robert DePalo at Arjent Limited. Prior to the sale, I had returned to New York full-time. I was not offered a position by Robert DePalo at Arjent Limited at that time.

In approximately 2006, I began to develop a plan to start my own brokerage firm. In order to solicit investment funds to start the brokerage firm, I incorporated a holding company named SPK. Using a private placement memorandum, I solicited investments from contacts I had developed during my career in the financial services industry. After I secured enough investment capital and obtained the appropriate licenses from the Financial Industry Regulatory Authority (FINRA), I opened InterMerchant Securities. LLC. ("InterMerchant"), a FINRA regulated brokerage firm in the United States.

In approximately the summer of 2008, Joshua Gladtke, who was still working at Arjent Limited, told me that there was an opportunity to buy into the United Kingdom brokerage firm. Based on this information, I solicited additional money from SPK investors to fund the purchase of a 40% ownership interest in Arjent Limited. The Board, led by Robert DePalo, and I settled on a price of $900,000. During these negotiations, I learned that the United Kingdom brokerage firm was wholly-owned by a company named Arjent Services Limited and that SPK would actually be purchasing ownership in the holding

1

company, not directly in Arjent Limited. Upon SPK's purchase of Arjent Services Limited, SPK obtained an interest in Arjent Limited, along with Robert DePalo, Allied International (a company owned by Robert DePalo's wife, but in its dealings with the Arjent entities, controlled by Robert DePalo), Joshua Gladtke, Gary Schonwald, Tony Woodward, and others. As the 40% owner, SPK controlled the largest individual stake in Arjent Services Limited and thus Arjent Limited. However, in reality, Robert DePalo controlled the brokerage firm through his influence over the other owners. Robert DePalo told me that he personally contributed millions of dollars in capital contributions and loans to the company. At around the time of the purchase, I learned that Robert DePalo controlled Arjent LLC., a U.S. brokerage firm, which like Arjent Limited, was 100% owned by a holding company with an almost identical name, Arjent Services Ltd (a company incorporated in the United States).

As it relates specifically to Allied International—one of the owners of Arjent Services Limited—Robert DePalo stated that it was his wife's, Rosemarie DePalo's, company. However, as far as I could observe, Rosemarie DePalo never participated in any aspect of Arjent Services Limited's (or Arjent Limited's) business and she never attended a single board meeting from the time that I became a Director at Arjent Limited until present. I never observed Rosemary DePalo act on Allied's behalf as it related to its ownership of Arjent Services Limited or Arjent Limited.

As a result of SPK's purchase of 40% of Arjent Services Limited, I became a Director of Arjent Limited in April 2009. In September 2010, I decided to shut down InterMerchant's retail brokerage operations. I negotiated with Robert DePalo to absorb some of my employees, including brokers into at Arjent LLC, his U.S. brokerage firm. In order to execute the Arjent Limited business plan, Robert DePalo arranged for the purchase of hundreds of Arjent Limited customer accounts from the United Kingdom to himself for the sum of $600,000. In effect, these customer accounts would be transferred on the books from Arjent Limited to Arjent LLC, and would be serviced by Arjent LLC, which included former InterMerchant brokers, who were now working at Arjent LLC in New York. Robert DePalo told me that the funds to purchase the accounts were his own. As a result of the purchase, the accounts were moved to Arjent LLC.

In addition to working as a Director at Arjent Limited, I also became the President at Arjent LLC. I have since reviewed the Pangaea PPM and various amendments that state that I was the Managing Director at Arjent LLC. Those statements are false. For the first year, my brokers and I remained in the InterMerchant offices located at 750 Third Avenue, New York, NY. Meanwhile, Arjent LLC maintained offices at 570 Lexington, Avenue, 22nd Floor, New York, NY. Beginning in July 2010, I began receiving emails from Robert DePalo about starting up a new holding company which would be comprised of indirect ownership interests in both Arjent LLC and Arjent Limited. Very shortly thereafter, I began receiving drafts of a private placement memorandum for a company named Pangaea. Additionally, at Robert DePalo's suggestion, in my capacity as President of SPK, I agreed to forfeit a 5% interest in Arjent Services Limited, which would be transferred to Pangaea. I authorized SPK to directly transfer a 5% ownership

2

interest in Arjent Services Limited to Pangaea. SPK never transferred nor authorized any of its ownership interest in Arjent Services limited directly to Robert DePalo.

In 2010, I assisted the then CEO of Arjent Limited in drafting language describing Arjent Limited's new business strategy. I knew this language would be incorporated in the Pangaea PPM. Other than this, I took no part in the drafting of the Pangaea PPM. I believe the main contributors in the drafting of the Pangaea PPM were Robert DePalo and Gary Schonwald. Major decisions, however, were made by Robert DePalo. I did not participate in the editing or drafting of the section of the PPM related to "Certain Relationships and Related Transactions." I, nevertheless, failed to ensure that the statements contained in the PPM were accurate as it related to myself or SPK.

As noted above, the Pangaea PPM stated:

> Arjent Limited entered into an Advisory Services Agreement dated May 1, 2009 with SPK Partners LLC, an entity with which Mr. Lerman is associated. This service agreement provides for a five year term commencing as of May 1, 2009 under which Arjent Limited would pay to SPK a monthly fee of $17,250.

This statement, which appeared in the Pangaea PPM and several amendments. which were sent to Pangaea investors, is false. Despite the fact that I received copies of the PPM during this time period, I never made any attempts to correct the falsity of that statement or to so inform the investors of Pangaea or the investors of SPK.

In that same section, there was also a paragraph related to an Advisory Services Agreement between a company named Excalibur and Arjent Limited. That paragraph stated:

> Arjent Limited entered into an Advisory Services Agreement dated June 15, 2006 with Excalibur Asset Management LLC, an entity with which Mr. DePalo is associated. This service agreement has been amended to provide for a five year additional term commencing as of May 1, 2009 under which Arjent Limited would pay to Excalibur a monthly fee of $17,250.

It is my understanding that, Robert DePalo was the sole officer and Director. Excalibur had no other employees. Furthermore, Robert DePalo was the Executive Chairman of Arjent Limited. Excalibur did not provide advisory services to Arjent Limited. I never saw Excalibur provide any services or produce any documents to Arjent Limited. In Robert DePalo's capacity as Executive Chairman, he contributed approximately 2-3 hours per month. The monthly payments sent to Excalibur constituted his salary from Arjent Limited.

I was also familiar with a provision contained in the PPM titled "Use of Proceeds". This provision directed that $2 million of the total subscription of $5.5 million was owed to Robert DePalo as "Repayment to [him] of his basis in contributed Portfolio Company

3

securities." Prior to the offering, Robert DePalo sent an email to both Joshua Gladtke and me, which appeared to be an early draft of the rough guidelines of what would become the Pangaea offering. In that email, Robert DePalo laid out the structure of an entity he referred to as "Newco". "Newco" was to be a holding company which held a 15% ownership interest in Arjent LLC, and a 20% ownership interest in Arjent Limited. Robert DePalo also stated in the email, that as part of this offering he would be entitled to a "repayment" of $500,000, which he would give to Joshua Gladtke and Gladtke's infant son as a gift. As it related to the repayment provision of the Pangaea PPM, Robert DePalo told me that he had personally loaned significant sums of money to both Arjent Limited and Arjent LLC, and that he was owed repayment of these loans.

From around late 2010 through late 2012, I was never told by Robert DePalo that he was sending Pangaea investor money to his personal account prior to sending it through to Arjent Limited. I was not an officer or Director of Pangaea and I did not have access to the bank records for Pangaea. Robert DePalo frequently stated that he personally funded Arjent Limited. On numerous occasions, Robert DePalo transferred funds to Arjent Limited, which he represented were his own (or his family's) personal contributions or loans. At various times after Robert DePalo "made" loans or contributions to Arjent Limited, he directed officers of Arjent Limited to use those same funds to repay either himself or Allied for earlier "loans" made to Arjent Limited.

## ACKNOWLEDGMENT

I, Gregg A. Lerman, do solemnly swear that the information contained within this Factual Statement, as well as any other information I have provided to the District Attorney's Office of New York County, is true to the best of my ability. I understand that false statements contained herein as well as any false information provided by me to the District Attorney's Office will constitute a breach of the Deferred Prosecution Agreement to which this Factual Statement is attached.

Dated: April 27, 2015

Gregg A. Lerman

Mary/Beth Buchanan, Esq.

Brian A. Kudon
Assistant District Attorney

José A. Fanjul
Assistant District Attorney

4