**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
┌─────────────────────────────────┐
│ USDS SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____                  │
│ DATE FILED: 2/5/19              │
└─────────────────────────────────┘
```

--------------------------------------------------------------x

**SECURITIES AND EXCHANGE** :
**COMMISSION,** :
:
:
          **Plaintiff,** :
:
     **v.** : **No. 15 Civ. 3877 (KMW)**
**ROBERT P. DEPALO, JOSHUA B. GLADTKE,** :
**GREGG A. LERMAN, PANGAEA TRADING** :
**PARTNERS LLC, ARJENT LLC,** : **ECF CASE**
**ARJENT LIMITED, AND EXCALIBUR ASSET** :
**MANAGEMENT LLC,** :
:
          **Defendants,** :
:
**and** :
:
**ROSEMARIE DEPALO AND** :
**ALLIED INTERNATIONAL FUND, INC.,** :
:
          **Relief Defendants.** :
--------------------------------------------------------------x

KMW

**[PROPOSED] FINAL JUDGMENT AS TO DEFENDANT JOSHUA B. GLADTKE**

The Securities and Exchange Commission having filed a Complaint and Defendant

Joshua B. Gladtke ("Defendant") having entered a general appearance; consented to the Court's

jurisdiction over Defendant and the subject matter of this action; consented to entry of this final

Judgment ("Final Judgment"); waived findings of fact and conclusions of law; and waived any

right to appeal from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is

permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the

Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of

interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading;
or

(c)    to engage in any transaction, practice, or course of business which operates or
would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in
Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who
receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's
officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or
participation with Defendant or with anyone described in (a).

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant
is permanently restrained and enjoined from, directly or indirectly, aiding and abetting any
violation of Section 17(a) of the Exchange act [15 U.S.C. § 78q(a)] and Rule 17a-3(a)(12)
thereunder [17 C.F.R. § 17a-3(a)(12)], by knowingly or recklessly providing substantial
assistance to any member, broker or dealer in failing to make and maintain a questionnaire or
application for employment to be executed by each "associated person" of such member, broker
or dealer, which questionnaire contains the specified information set out in the Rule 17a-3(a)(12)
[17 C.F.R. § 17a-3(a)(12)].

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in
Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who
receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's
officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or
participation with Defendant or with anyone described in (a).

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgementof $185,000, representing his ill-gotten gains as a result of the conduct alleged in the Complaint. However, Defendant's obligation to pay disgorgement shall be deemed satisfied upon entry of this Final Judgment by (i) Defendant's forfeiture of $185,000 of ill-gotten gains to the New York County District Attorney's Office and (ii) the restitution order of $6,500,000 against Robert DePalo, both ordered in *New York v. DePalo, et al.*, Indictment No. 01450/2015 (N.Y. Sup. Ct.).

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

VII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain

jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VIII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil

Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: **Feb. 5** , **2019**

_Kimba M. Wood_
UNITED STATES DISTRICT JUDGE

5

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | |
|---|---|
| **SECURITIES AND EXCHANGE** | : |
| **COMMISSION,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :    **No. 15 Civ. 3877 (KMW)** |
| **ROBERT P. DEPALO, JOSHUA B. GLADTKE,** | : |
| **GREGG A. LERMAN, PANGAEA TRADING** | : |
| **PARTNERS LLC, ARJENT LLC,** | :    **ECF CASE** |
| **ARJENT LIMITED, AND EXCALIBUR ASSET** | : |
| **MANAGEMENT LLC,** | : |
| | : |
| **Defendants,** | : |
| | : |
| **and** | : |
| | : |
| **ROSEMARIE DEPALO AND** | : |
| **ALLIED INTERNATIONAL FUND, INC.,** | : |
| | : |
| **Relief Defendants.** | : |

-------------------------------------------------------------------x

## CONSENT OF DEFENDANT JOSHUA B. GLADTKE

1.      Defendant Joshua B. Gladtke ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in *New York v. DePalo, et al.*, Indictment No. 01450/2015 (N.Y. Sup. Ct.) ("*New York v. DePalo*"), Defendant pleaded guilty to one count of grand larceny in the second degree in violation of NY Penal Law § 155.40; one count of scheme to defraud in the first degree, in violation of NY Penal Law § 190.65(1)(a); and one count of securities fraud in violation of NY General Business Law § 352-c(5). In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is

attached as Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *New York v. DePalo*.

3.      Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

>       (a)      permanently restrains and enjoins Defendant from violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C. F. R. § 240.10b-5; and from aiding and abetting further violations of Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 17a-3(a)(12); and

>       (b)      orders that while Defendant is liable to pay disgorgement of $185,000, representing his ill-gotten gains, such obligation to pay disgorgement shall be deemed satisfied by Defendant's forfeiture of $185,000 of ill-gotten gains to the New York County District Attorney's Office and (ii) the restitution order of $6,500,000 against Robert DePalo, both ordered in *New York v. DePalo*.

4.      Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

6.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

2

7.       Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

8.       Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

9.       Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

10.      Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any

3

disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

11.    Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph

4

affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

12.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

13.     Defendant agrees to waive all objections, including but not limited to, constitutional, timeliness, and procedural objections, to the administrative proceeding that will be instituted when the Final Judgment is entered.

14.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

15.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: 10/25/18

Joshua B. Gladtke

On October 25th, 2018, JOSHUA GLADTKE, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

ELIZABETH L. WATSON
Notary Public - State of New York
No. 01WA6376652
Qualified in New York County
My Commission Expires June 18, 2022

Notary Public
Commission expires:

5

# Exhibit A

```
 1 ║ SUPREME COURT      NEW YORK COUNTY
   ║ TRIAL TERM         PART 41
 2 ║ ------------------------------------x
   ║ THE PEOPLE OF THE STATE OF NEW YORK: INDICTMENT #
 3 ║                                    : 1450/2015
   ║                                    :
 4 ║                                    :
   ║          AGAINST                   :
 5 ║                                    :
   ║ JOSHUA GLADTKE                     :
 6 ║                  Defendant.        :
   ║ ------------------------------------x PLEA
 7 ║
   ║                     100 Centre Street
 8 ║                  New York, New York 10013
   ║                      August 31, 2015
 9 ║
10 ║
   ║ B E F O R E:
11 ║
   ║              HONORABLE RONALD ZWEIBEL
12 ║                 Justice of the Supreme Court
13 ║
14 ║ A P P E A R A N C E S:
15 ║
   ║ For the People:    CYRUS R. VANCE, JR., ESQ.,
16 ║                    New York County District Attorney
   ║                    One Hogan Place
17 ║                    New York, New York 10013
   ║                    BY:   JOSE FANJUL, ESQ.
18 ║                    Assistant District Attorney
19 ║
   ║ For the Defense:   MATTHEW BRIEF, ESQ.
20 ║
21 ║
22 ║
23 ║
24 ║                        Vikki J. Benkel
   ║                        Senior Court Reporter
25 ║
   ║
```

*Vikki J. Benkel*
*Senior Court Reporter*

1        COURT CLERK:  Calendar number three, Joshua

2   Gladtke, indictment number 1450 of 2015.

3        MR. BRIEF:  Good morning, Your Honor.

4        Matthew Brief for Mr. Gladtke.

5        MR. FANJUL:  Jose Fanjul for the People.

6        MR. BRIEF:  May we approach?

7        THE COURT:  Yes.

8        (Whereupon, a bench conference was held off the

9   record)

10       MR. FANJUL:  With the Court's permission there is

11  a plea and cooperation agreement along with a stipulation

12  and asset forfeiture order the defendant and defense counsel

13  will sign.

14       MR. BRIEF:  Your Honor, pursuant to a plea and

15  cooperation agreement that we have described at the bench,

16  Joshua Gladtke withdraws his previously entered plea of not

17  guilty and would like to enter a plea of guilty to counts

18  one, ten and 12 of the indictment.

19       Count one I believe after a motion by the

20  prosecutor to grand larceny in the second degree --

21       THE COURT:  It is a plea under count one to the

22  attempted?

23       MR. BRIEF:  I think it is grand larceny in the

24  second degree.

25       THE COURT:  Because you told me at the bench

1    something else.

2           MR. FANJUL:  I do apologize.

3           MR. BRIEF:  And count ten being scheme to defraud
4    in the first degree.

5           And count 12 being securities fraud in violation
6    of general business law 352 C5 colloquially known as the
7    Martin act, to cover the entire indictment.

8           MR. FANJUL:  Your Honor, at this time the People
9    are moving to reduce count one, grand larceny in the first
10   degree under Penal Law 155.42, to grand larceny in the
11   second degree under Penal Law 155.40 for purposes of
12   disposition.

13          The defendant at this time has signed a plea and
14   cooperation agreement along with a waiver of his right to
15   appeal and a stipulation of asset forfeiture.

16          The People have previously provided the defendant
17   with a notice of immigration consequences and are currently
18   in possession of his U.S. passport.

19          We have informed counsel of any collateral results
20   of his plea here today were he not a U.S. citizen.

21          Additionally, Your Honor, under the plea agreement
22   the People will ultimately recommend, if the defendant
23   testifies truthfully and accurately at the conclusion of any
24   trial in this matter, that the defendant be sentenced to
25   five years probation.

1           Should the defendant fail in any aspect of his

2   plea and cooperation agreement, the minimum sentence will be

3   two to six years.  The defendant will not be allowed to

4   withdraw his previously entered guilty plea.

5           Additionally, the defendant is forfeiting 185

6   thousand dollars in funds that are being recovered as part

7   of this securities fraud.

8           Mr. Brief has provided the People with a 28

9   thousand dollar check from his escrow account.  We

10  acknowledge receipt.  I will give that to Ms. Bhatia from my

11  office, who is handling the asset forfeiture portion of this

12  case.

13          MR. BRIEF:  I have explained to my client that he

14  does face a minimum of two to six years if he fails to

15  cooperate and that the Court will follow the prosecutor's

16  recommendation of probation should he testify fully and

17  truthfully.

18          MR. FANJUL:  As previously discussed at the bench,

19  Your Honor, the People would like to seal the minutes of

20  this plea.

21          THE COURT:  Do you know what level felony that is?

22          MR. FANJUL:  It is class C felony, grand larceny

23  in the second degree under 155.40.

24          THE COURT:  Grand larceny in the second degree is

25  a C, so the attempt of that would be a D.

1          MR. FANJUL:  No, it is just grand larceny in the
2    second degree.
3          I misspoke, Your Honor, at the bench when I said
4    attempt to count one.  What I meant was grand larceny in the
5    second degree under penal law 155.40, which is a class C
6    felony.
7          THE COURT:  So the agreement is that he will
8    receive, if he does not fully cooperate, the minimum you
9    said would be two to six.
10          MR. FANJUL:  Yes.
11          THE COURT:  So in other words, the agreement is
12    that it would be more than what the minimum is that is
13    called for.
14          MR. BRIEF:  Well, two to six or more.
15          THE COURT:  The minimum, you said the minimum.
16    The minimum is actually one to three.  But it will be a
17    minimum of two to six and could be anywhere from up to five
18    to 15.
19          MR. FANJUL:  Yes, the minimum.
20          MR. BRIEF:  With the flip side being probation for
21    his cooperation.
22          THE COURT:  Mr. Gladtke, you heard what your
23    lawyer just stated?
24          THE DEFENDANT:  Yes.
25          THE COURT:  Is it your wish at this time to

1    withdraw your heretofore entered plea of not guilty to this

2    indictment and you are now offering to plead guilty under

3    count one to grand larceny in the second degree, scheme to

4    defraud in the first degree and securities fraud in

5    violation of general business law 352.C5.

6              Is that what you wish to do?

7              THE DEFENDANT: Yes, Your Honor.

8              THE COURT: Are you entering this plea of your own

9    free will?

10             THE DEFENDANT: I am.

11             THE COURT: How old are you?

12             THE DEFENDANT: 37.

13             THE COURT: Are you using drugs or medication of

14   any kind at this time?

15             THE DEFENDANT: No.

16             THE COURT: Have you discussed the case and your

17   plea of guilty with your attorney?

18             THE DEFENDANT: I have.

19             THE COURT: Have you had sufficient time to

20   thoroughly discuss your decision to plead guilty?

21             THE DEFENDANT: I have.

22             THE COURT: Are you pleading guilty because you

23   are guilty of these charges?

24             THE DEFENDANT: Yes.

25             THE COURT: Do you understand that by pleading

1        guilty you are waiving your constitutional rights, which

2        include your right to trial by jury, your right to confront

3        witnesses against you, your right to remain silent and your

4        right to put the State to its burden of proving your guilt

5        beyond a reasonable doubt?

6                THE DEFENDANT:  I understand.

7                THE COURT:  Do you also understand if your plea of

8        guilty is accepted by this Court, it will be exactly the

9        same as if you had been found guilty after trial of grand

10       larceny in the second degree, scheme to defraud in the first

11       degree and securities fraud?

12               THE DEFENDANT:  I understand.

13               THE COURT:  You understand the charges you are

14       pleading guilty to; is that correct?

15               THE DEFENDANT:  I do.

16               THE COURT:  Has anyone, including the Court, the

17       assistant district attorney, your lawyer or anyone else,

18       forced you or threatened you to enter these pleas of guilty?

19               THE DEFENDANT:  No.

20               THE COURT:  The indictment charges you with grand

21       larceny in the first degree under the first count of the

22       indictment.

23               As I stated, you are being permitted to plead

24       guilty to grand larceny in the second degree under that

25       count, wherein it is alleged that the defendants, Robert

1     Depalo, Joshua Gladtke and Pangaea Trading Partners LLC in

2     the County of New York and elsewhere during the period from

3     on or about September 1, 2010 to on or about December 31,

4     2012, stole property, to wit money, from investors, known as

5     Investor Number 1, and the value of the property exceeded

6     one million dollars.

7                Do you admit to that charge?

8                THE DEFENDANT:  Yes.

9                THE COURT:  He is allocuting to the charge.

10               MR. BRIEF:  I understand.

11               THE COURT:  The second count you are offering to

12    plead guilty to is scheme to defraud in the first degree,

13    wherein it is alleged that the defendants, Robert Depalo,

14    Joshua Gladtke and Pangaea Trading Partners LLC and

15    Excalibur Asset Manager LLC, in the County of New York and

16    elsewhere, during the period of on or about July 1, 2010 to

17    on or about December 31, 2014, engaged in a scheme

18    constituting a systematic ongoing course of conduct with

19    intent to defraud ten or more persons and to obtain property

20    from ten or more persons by false and fraudulent pretenses,

21    representations and promises, and so obtained property, to

22    wit money, from one or more such persons.

23               Do you admit to that charge?

24               THE DEFENDANT:  I do.

25               THE COURT:  Count 12 charges you with securities

1  fraud in violation of business law 352 C5 committed as

2  follows:

3           The defendants, Robert Depalo, Joshua Gladtke,

4  Pangaea Trading Partners LLC and Excalibur Asset Management

5  LLC, in the County of New York and elsewhere during the

6  period from on or about July 1, 2010 to on or about December

7  31, 2014, intentionally engaged in a scheme constituting a

8  systematic ongoing course of conduct, with intent to defraud

9  ten or more persons and to obtain from ten or more persons

10  by false and fraudulent pretense, representations and

11  promises, and so obtained property, to wit money, from one

12  or more such persons, while engaged in the producing and

13  promoting the issuance, distribution, exchange, sale,

14  negotiation or purchase of securities, to wit, non voting

15  preferred membership units, in Pangaea Trading Partners LLC.

16           Do you admit to that charge?

17           THE DEFENDANT:  I do.

18           THE COURT:  I am agreeing to sentence you in

19  accordance with the terms spelled out in a plea and

20  cooperation agreement that you entered into with the

21  District Attorney's Office.

22           You and your lawyer went over this agreement

23  together; is that correct?

24           THE DEFENDANT:  We did.

25           THE COURT:  Do you understand all the terms of

1   this agreement?

2          THE DEFENDANT:  I do.

3          THE COURT:  Do you understand what the district

4   attorney had stated earlier, that you are forfeiting certain

5   securities, as I understand it 28 thousand dollars is being

6   paid today by corporate escrow check which will be held by

7   your attorney.

8          MR. BRIEF:  Your Honor, prior to this proceeding I

9   gave Mr. Fanjul a check from my firm's escrow account for 28

10  thousand dollars representing the sale of assets that had

11  previously been permitted to be sold by Mr. Gladtke pursuant

12  to an agreement and the remaining 157 thousand dollars will

13  come from funds that will be released under forfeiture.

14         THE COURT:  The check that you received, is that a

15  certified check?

16         MR. BRIEF:  The check that I will --

17         THE COURT:  I know that your check will be good,

18  but what about the check that --

19         MR. BRIEF:  It will come from the escrow account.

20         THE COURT:  It is going to be put in your escrow

21  account?

22         MR. BRIEF:  From the liquidated funds from JP

23  Morgan.

24         THE COURT:  The balance of the funds will be paid

25  on or by September 30, 2015 in the sum of 157 thousand

1   dollars; is that correct?

2           MR. BRIEF:   That's correct.

3           That is of course if JP Morgan releases the funds

4   in a timely fashion.

5           THE COURT:   The minutes of this agreement are to

6   be sealed, with a copy that will be given to Judge Shulman

7   so he can release funds under the temporary restraining

8   order.

9           Plus there will be a release of this plea

10  agreement and plea to the Securities Exchange Commission.

11          The defendant has agreed to be disbarred from

12  selling securities for life.

13          MR. FANJUL:   Also, Your Honor, FINRA, the

14  Financial Institution Regulatory Authority, which the

15  defendant is currently licensed to sell securities, because

16  he has agreed to waive that right for the remainder of his

17  life.

18          The defendant also has a written plea agreement

19  that he would like to read.

20          THE COURT:   As I understand it it has been

21  executed.

22          MR. FANJUL:   Sorry, written allocution which he

23  would like to read.

24          THE COURT:   But he has executed the plea

25  agreement?

1 |           MR. FANJUL:  He has.

2 |           MR. BRIEF:  Yes, Your Honor.

3 |           THE COURT:  And his passport has been surrendered?

4 |           MR. FANJUL:  The passport has not been returned,

5 | it is still in the People's custody pursuant to the bail

6 | package.

7 |           Upon sentencing it will be returned.

8 |           THE COURT:  Are you holding it?

9 |           MR. FANJUL:  Yes, Your Honor.

10 |          THE COURT:  He also waived his right to appeal the

11 | agreement.

12 |          If he fully cooperates he will receive five years

13 | probation.  If he does not fully cooperate the minimum

14 | sentence will be two to six up to five to 15 at the Court's

15 | discretion.

16 |          He will read an allocution.

17 |          MR. FANJUL:  Yes, Your Honor.

18 |          THE DEFENDANT:  I, Joshua Gladtke plead guilty

19 | to --

20 |          THE COURT:  Will you read it slowly and loudly so

21 | the court reporter can take it down.

22 |          THE DEFENDANT:  From on or about September 1, 2010

23 | to on or about December 31, 2014, I Joshua Gladtke, owned a

24 | small interest in an entity known as Arjent Services

25 | Limited, the parent of a brokerage firm in the United

*Vikki J. Benkel*
*Senior Court Reporter*

1    Kingdom named Arjent Limited (Arjent UK), and a small
2    varying percentage interest in Arjent LLC, (Arjent US).
3    Arjent UK along with a U.S. brokerage firm, Arjent US, were
4    each owned by parents similarly named Arjent Services
5    Limited and Arjent Services Ltd. respectively. My ownership
6    interest in Arjent UK was purchased through a loan from
7    Allied, a company ostensibly owned by Rosemary Depalo, but
8    which for all essential purposes was operated and controlled
9    by Robert Depalo, chairman of Arjent US and executive
10   chairman of Arjent UK. The Arjent entities were primarily
11   engaged in the business of financial services and money
12   management.

13                Beginning in or about September 2010, I
14   participated in a scheme with Depalo and others, whereby we
15   engaged in private placement offering to raise funds for an
16   entity called Pangaea Trading Partners LLC (Pangaea). As
17   part of that scheme, various private placement memoranda
18   (PPM) were drafted and issued that contained material
19   misrepresentations and omissions, as outlined below.
20   Pangaea was incorporated in Delaware as a holding company
21   for a ten percent ownership interest in Arjent Services Ltd.
22   (the hundred percent owner of Arjent US), and 9.9 percent
23   ownership interest in Arjent Services Limited (the parent of
24   Arjent UK). Robert Depalo was the president and managing
25   member of Pangaea, and to my knowledge, controlled its

1   management and directed the flow of investor funds.  I was
2   appointed as Pangaea's vice president and was primarily
3   tasked with soliciting investments from individuals located
4   in the United Kingdom.  Through the September 30, 2010 PPM
5   and a subsequent PPM dated June 4, 2012, I helped raise
6   approximately 6.5 million dollars in investor funds for
7   Pangaea from 22 investors.

8          Leading up to September 30, 2010, I received
9   several draft Pangaea PPMs from Depalo.  I also received
10  several emails from Depalo expressing the importance of
11  getting the first 250 thousand dollars in Pangaea
12  investments no later than October 15, 2010.  At the same
13  time, as a director of Arjent UK, I was aware of an
14  agreement between Depalo and Arjent UK transferring hundreds
15  of retail brokerage accounts from Arjent UK to Depalo in a
16  personal capacity.  This agreement required Depalo to make
17  his first payment of 250 thousand dollars towards his
18  purchase of Arjent UK retail customer brokerage accounts no
19  later than October 15, 2010.  I am now aware that Depalo
20  needed the first 250 thousand dollar investor funds so that
21  he could make a personal payment he owed Arjent UK for the
22  purchase of the retail brokerage accounts.

23          I was also aware that three loans given to me by
24  Depalo totaling 185 thousand dollars were disbursed very
25  closely in time to three of the Pangaea investments made by

1      investors.  I believe that Depalo tied these loans to those

2      investments.  I was also aware that it was unlikely that

3      Depalo would have asked for repayment of these funds and

4      therefore they should have been disclosed to potential

5      investors as the solicitation for the PPM progressed.

6              The PPMs contained numerous false and misleading

7      statements, and failed to disclose other critical

8      information, related to the material aspects of Pangaea

9      investment.  At the time I participated in soliciting

10     investments in Pangaea through the PPMs, I was aware of

11     several of these misrepresentations and omissions, including

12     but not limited to the following:

13             A, the PPM stated that Pangaea's ten percent

14     ownership interest in Arjent UK was due to a contribution by

15     Depalo of his own ownership interest in that entity.  At

16     some point during the period of time that I was soliciting

17     investors, I became aware that Mr. Depalo's ten percent

18     contribution of Arjent UK to Pangaea came in part from a

19     five percent contribution from SPK, an entity controlled by

20     Gregg Lerman.

21             B, the PPM disclosed a consulting agreement

22     between an entity called Excalibur Asset Trading Management,

23     LLC, (Excalibur) and Arjent UK, under which Excalibur would

24     receive more than 17 thousand dollars monthly from Arjent

25     UK.  The PPM disclosed that Depalo was associated with

1   Excalibur, however, it materially misrepresented the degree
2   of the association. At the time I was aware that Excalibur
3   was nothing more than an alter ego of Depalo, and that the
4   payments were designed to be a vehicle for Depalo to divert
5   investor funds to himself.

6           C, the PPMs contained sections entitled "Use of
7   Proceeds" stating in substance, that investor capital was to
8   be applied in a specific order:  First, for "operating
9   capital and further expenses".  Second, for "repayments to
10  Robert Depalo of his basis in contributed portfolio
11  securities".  And third, "expenses of the offering".
12  However, I was aware that investor capital was not applied
13  in the order set forth under the Use of Proceeds section in
14  the PPMs, and that Depalo was diverting at least some of the
15  funds obtained from investors immediately upon their
16  receipt.  Further, I was aware that Depalo was diverting
17  funds before investors were repaid 120 percent of their
18  investment, as directed by the PPMs.

19          Aside from the numerous misrepresentations and
20  omissions contained in the PPM, I also misled Pangaea
21  investors in several ways:  One, I told one or more
22  investors that they would be investing alongside the
23  principals, including Depalo and Gregg Lerman in "the
24  company".  And two, I told investors that if they did not
25  invest now, they would likely miss out because the offering

1    was very close to fully subscribed.

2              The above material misrepresentations and

3    omissions were designed to get investors to part with their

4    money, and as a result of the efforts of Depalo and myself,

5    investors did, in fact, part with more than fifty thousand

6    dollars.

7              MR. FANJUL:   The People are satisfied with the

8    defendant's oral allocution.

9              THE COURT:   What are we doing about an

10   adjournment?

11             Step up.

12             (Whereupon, a bench conference was held off the

13   record)

14             THE COURT:   Let me make it clear also that the

15   plea agreement is to be kept under seal, copies are just to

16   be given to Judge Shulman and the SEC, as I previously

17   indicated.

18             The court reporter will be given a copy just to

19   make the record, which will be kept under seal, and the

20   written document will be destroyed.

21             MR. FANJUL:   Also FINRA where the defendant is

22   licensed.

23             THE COURT:   FINRA will be given a copy also.

24             And a copy to the district attorney, of course.

25             I want to make sure that the record is clear, Mr.

1    Gladtke, that by waiving your right to appeal what you are

2    waiving is your right to request the Appellate Division to

3    review the terms of this plea, as well as any possible

4    sentence.

5              MR. BRIEF:  Yes, except for the limited issues

6    that are outlined in the waiver of appeal.

7              THE COURT:  Yes, he does reserve certain limited

8    constitutional rights.

9              COURT CLERK:  Are you ready to be arraigned on the

10   plea?

11             MR. BRIEF:  Yes.

12             COURT CLERK:  Joshua Gladtke, do you consent to

13   withdraw your previous plea of not guilty and plead to one

14   count of attempted grand larceny in the second degree, one

15   count of scheme to defraud in the first degree and one count

16   of securities fraud to satisfy indictment number 1450 of

17   2015.

18             MR. BRIEF:  It is one count of grand larceny in

19   the second degree under the first count.

20             You said attempted.

21             COURT CLERK:  Not attempted, okay.

22             One count of grand larceny in the second degree,

23   one count of scheme to defraud in the first degree and one

24   count of securities fraud to satisfy indictment number 1450

25   of 2015.

1          Is that your plea, sir?

2          THE DEFENDANT:  Yes, it is.

3          THE COURT:  Okay.

4          Here is the plea agreement that we used for the

5      plea.

6          MR. FANJUL:  Thank you.

7          MR. BRIEF:  December 3rd, Your Honor.

8          THE COURT:  December 3rd.

9

10          I, Vikki J. Benkel, a Senior Court Reporter in and for

11      the State of New York, do hereby certify that the foregoing

12      transcript is true and accurate to the best of my knowledge,

13      skill and ability.

14

15

16                    Vikki J. Benkel

17

18

19

20

21

22

23

24

25